USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

YORKSHIRE TOWERS COMPANY, L.P. and
YORKSHIRE TOWERS TENANTS ASSOCIATION,

**Case No. 10-cv-8973 (TPG)**

                        Plaintiffs,

          -against-

THE FEDERAL TRANSIT ADMINISTRATION,
THE METROPOLITAN TRANSPORTATION
AUTHORITY and THE METROPOLITAN
TRANSPORTATION AUTHORITY CAPITAL
CONSTRUCTION COMPANY,

**STIPULATION AND ORDER
REGARDING RELEASE OF
CONFIDENTIAL
INFORMATION FOR
SETTLEMENT DISCUSSIONS**

                        Defendants.

------------------------------------------------------------------------x

YORKSHIRE TOWERS COMPANY, L.P. and
YORKSHIRE TOWERS TENANTS ASSOCIATION,

                        Plaintiffs,

          -against-

UNITED STATES DEPARTMENT OF
TRANSPORTATION, RAY LAHOOD, in his capacity as
Secretary of the United States Department of
Transportation, THE FEDERAL TRANSIT
ADMINISTRATION, PETER M. ROGOFF, in his capacity
as administrator of the Federal Transit Administration, THE
METROPOLITAN TRANSPORTATION AUTHORITY,
JAY H. WALDER, in his capacity as Chairman of the
Metropolitan Transportation Authority, THE NEW YORK
CITY TRANSIT AUTHORITY, THOMAS F.
PRENDERGAST, JR., in his capacity as President of the
New York City Transit Authority and THE
METROPOLITAN TRANSPORTATION AUTHORITY
CAPITAL CONSTRUCTION COMPANY, MICHAEL
HORODNICEANU, in his capacity as President of the
Metropolitan Transportation Authority Capital Construction
Company,

**Case No. 11-cv-1058 (TPG)**

**RELATED CASE**

                        Defendants.

------------------------------------------------------------------------x

WHEREAS, Plaintiffs commenced the first above-captioned case against Defendant Federal and State Agencies on November 30, 2010 (the "First Case"). The First Case is an action under the Freedom of Information Act and the Freedom of Information Law, in the alternative, to compel the release of specified records and materials ( the "FOI Case"). The same Plaintiffs on February 16, 2011 subsequently commenced the second above-captioned action environmental lawsuit seeking injunctive and related relief regarding the siting of the 86th Street Subway Station entrances of the Second Avenue Subway Project ("SAS") against the same Defendant Agencies and their executives. The second case was accepted by the Court (Greisa, J.) as related on February 28, 2011 (the "Related Case") ;and

WHEREAS, the attorneys for the Plaintiffs and each of the Defendants in the FOI Case and the Related Case  appeared for the first pretrial conference (the "PTC") in the FOI Case on February 25, 2011. At the conclusion of the PTC, the Court directed the Parties to make good faith efforts to settle both cases for which they have scheduled a settlement conference (the "Cases"); and

WHEREAS, the Plaintiffs and Defendants the Metropolitan Transportation Authority, the New York City Transit Authority, and the Metropolitan Transportation Authority Capital Construction Company and their officers (together "MTA") (Plaintiffs and the MTA, collectively the "Parties")  are interested in engaging in privileged, confidential, and non-binding discussions (the "Discussions") with the objective of reaching an amicable resolution of the Cases; and

WHEREAS, the MTA has developed plans, technical and other proprietary information (which includes maps, drawings, estimates, measurements, architectural designs and technical information and data) for the construction of station entrances, including entrances other than the preferred alternative identified in the Supplemental Environmental Assessment issued in May 2009 regarding the 72nd Street and 86th Street Entrances, and

other construction required for the 72nd and 86th Street Subway Stations entrances ("Confidential Information") which the MTA has determined is confidential or sensitive for reasons of public security and safety and to protect the integrity of the future contract bidding and award process in connection with construction of such stations, should not be disclosed to any third parties except with the MTA's prior written consent; and

WHEREAS, MTA desires to maintain the confidentiality of the Confidential Information disclosed to the plaintiffs, their consultants, and other persons who need to review such information in connection with the Discussions (together "Receiving Parties"); and

WHEREAS, the Receiving Parties have been or shall be informed of the importance of safeguarding the Confidential Information against unauthorized use or disclosure prior to their obtaining access to the Confidential Information.

NOW, THEREFORE, the Parties agree and consent, and the Court hereby orders the following in accordance with Rule 26(c) of the Federal Rules of Civil Procedure.

1. The Discussions

a.   The Parties agree that a primary objective of the Discussions is to effectuate a settlement of this action. All offers, promises, conduct and statements, whether oral or written, made in the course of the Discussions by any of the Parties and their representatives shall be confidential. Any such confidential information shall not be disclosed to third parties and shall be inadmissible for any purpose, except as provided herein. Attachment B to this Agreement shall be executed by all Discussion participants. However, evidence that is otherwise admissible and obtained through discovery, public disclosure by the MTA, or pursuant to New York Freedom of Information Law shall not be rendered inadmissible as a result of its use in the Evaluation Process.

b.   Materials produced by MTA for purposes of facilitating the Discussions, whether in written, physical, photographic, electronic, or other form (any and all of which shall be deemed as materials prepared and/or assembled for settlement purposes only) shall be marked "Settlement Confidential" and the Receiving Parties shall not use such documents for (or seek to admit them into evidence in) the pending action or in any prior or subsequent litigation or administrative proceedings involving the MTA and the Receiving Parties; documents disclosed electronically may contain within the name of the document "Settlement Confidential" instead of a mark on a document page.  Except to the extent such documents are obtained through discovery or public disclosure by the MTA or pursuant to New York Freedom of Information Law each Receiving Party shall maintain the confidentiality of such documents to the extent permitted by law.

c.   Materials produced by or at the direction of the MTA or a Receiving Party for purposes of facilitating the Discussions, whether in written, physical, photographic, electronic, or other form (any and all of which shall be deemed as materials prepared and/or assembled for settlement purposes only) shall be marked "Settlement Confidential" and no Party shall use such documents for (or seek to admit them into evidence in) the pending action or in any prior or subsequent litigation or administrative proceedings involving the Parties.  Except to the extent such documents are obtained through discovery or public disclosure by the MTA, or public disclosure by a Receiving Party that created or disclosed such information in the course of the Discussions or,Freedom of Information Law, the Parties shall maintain the confidentiality of such documents to the extent permitted by law.

d.   Any consultant retained by a Receiving Party and having any access to Confidential Information received from a Party other than the Party retaining the consultant shall execute Attachment B to this Agreement, confirming that such consultant agrees to be bound by the confidentiality provisions set forth herein.

2.    Confidential Information

Confidential Information shall be provided to the Receiving Parties in written, graphic, or in any other tangible form ("Document"), and shall be identified as being disclosed under this Agreement in Attachment A.  Any Confidential Information which is disclosed in oral form shall be identified as such at the time of disclosure and confirmed in written summary form by MTA within thirty (30) days after its disclosure to a Receiving Party and shall be subject to this Agreement.

3.   No Obligations to Update Confidential Information

The Receiving Parties acknowledge and agree that Confidential Information is provided to the Receiving Parties without any warranty whatsoever except a warranty that MTA has the right to enter into this agreement, and may be preliminary in nature and may not represent the final design adopted for the SAS or a section of the subway line thereof. Moreover, the Receiving Parties acknowledge and agree that MTA assumes no obligation under this Agreement to inform the Receiving Parties of, or give access to the Receiving Parties to any changes to the plans or the specific items of Confidential Information itemized in Attachment A.  If nevertheless any new or related Confidential Information is provided by MTA to the Receiving Parties at a later date, a description of such Confidential Information will be added as an addendum to this Agreement or provided under a separate Agreement.

4.   Obligations of Nondisclosure.

The Receiving Parties shall not make any use of the Confidential Information or materials prepared for the Discussions, including any summary or notes describing the technical details contained in the Confidential Information or such materials, in any media, for any purpose other than as expressly permitted by the Agreement or as expressly permitted in writing by the party disclosing the information ("Disclosing Party").  From the date hereof and at all times hereafter, each Receiving Party shall hold and treat the Confidential

Information in the strictest confidence and shall require its members, directors, officers, employees, partners, consultants, advisors, attorneys, architects, engineers, agents and independent contractors acting on the Receiving Party's behalf to hold the same in strictest Confidence.  Moreover, the Receiving Parties shall not:

a.   Directly or indirectly disclose or permit any other entity or any person to disclose any such Confidential Information to any other person, firm or entity without the prior written consent of Disclosing Party, except as required by applicable law; or

b.   Share or distribute copies of any Document containing any Confidential Information without the prior written consent of the Disclosing Party;

c.   Share or distribute copies of any Document containing any Confidential Information to any person whose possession of the Confidential Information is unnecessary for the Discussions.

The obligation of nondisclosure provided for here shall no longer apply if such documents are obtained through discovery or public disclosure by the MTA or pursuant to the Freedom of Information Law.

5.   Obligations of Third Parties Acting in Receiving Parties Behalf

a.   Each Receiving Party agrees that it shall take all necessary and appropriate measures with any persons or entities acting on the Receiving Party's behalf including, but not limited to, its members, directors, officers, employees, partners, consultants, advisors, attorneys, architects, engineers, agents, and independent contractors, to insure that such persons and entities are bound by each and every term of this Agreement in writing that will survive termination or expiration of their status as a director, officer, employee, consultant, agent, or independent contractor, as applicable.

b.   A Receiving Party, which as defined above includes any consultant to a Receiving Party who has access to or learns of Confidential Information as a result of its

provision to a Receiving Party in the course of or as a result of the Discussions, shall be barred from (i) bidding for, preparing or otherwise assisting or advising in the preparation of a bid for (including the provision of financial, engineering or legal advice), or receiving a contract for any MTA SAS construction work in connection with any contract in which Confidential Information is part of the bid documents; and (ii) advising, negotiating, representing or in any way participating in negotiations or proceedings regarding the payment of compensation in connection with the acquisition of property in connection with the construction of the 72nd Street and 86th Street entrances to the SAS.

6.   Protection of Information.

If either Receiving Party is required by law to disclose Confidential Information, it will immediately notify the Disclosing Party to permit the Disclosing Party to seek a protective order or take other appropriate action.  Each Receiving Party will not oppose the Disclosing Party's efforts to obtain a protective order or other assurance that Confidential Information will remain confidential.  If, in the absence of a protective or other order prohibiting disclosure, the Receiving Party, in the written opinion of its legal counsel, is advised to disclose the Confidential Information, it may disclose only the part of the Confidential Information as advised to be disclosed, following notice to, and approval by, Disclosing Party, through its General Counsel, as to such disclosure and the nature and wording of such disclosure.

7.   Return of Information.

Upon the earlier of Disclosing Party's written request or the termination or expiration of the Agreement, all Confidential Information and all copies thereof and any descriptions of the technical details in the Confidential Information and all copies thereof shall be promptly delivered by the Receiving Parties to the Disclosing Party at the expense of the Receiving Parties.

8. Cessation.

Upon completion of the purpose for which the Confidential Information is disclosed to the Receiving Parties, or if the Disclosing Party requests a discontinuation of any use of the Confidential Information by the Receiving Parties, the Receiving Parties shall immediately cease to use the Confidential Information for any purpose and return the Confidential Information to the Disclosing Party.

9. Relationship of Discussions to Other Review Processes; No Obligation to Disclose.

The Discussions contemplated by this Agreement are not intended to serve as a substitute for any public or governmental review process or information disclosure, which might be required of the MTA or any federal party to this action. The Discussions are not intended to substitute for, expand or limit whatever obligations the MTA and/or a federal party to this action may have under the relevant environmental laws or otherwise. It is further agreed that nothing in this Agreement shall be construed to require or obligate the Disclosing Party to disclose any Confidential Information at any time to the Receiving Parties.

10. Independent Contractor Status.

Nothing in this Agreement shall create a joint venture, partnership or other formal business relationship or entity of any kind, or an obligation to form any such relationship or entity, or impose any obligation upon either party to consummate a transaction, to enter into any discussion or negotiations with respect thereto, or to take any other action not expressly agreed to herein. Each party will act as an independent contractor and not as an agent of the other party for any purpose.

11. No Representations or Warranties.

The Disclosing Party does not make any representation or warranty as to the accuracy or completeness of any Confidential Information disclosed hereunder or the suitability of such information for a specific purpose.

12. Term.

This Agreement shall expire upon the Disclosing Party notifying the Receiving Parties in writing that confidentiality is no longer required or with respect to specific Confidential Information or Documents, upon public disclosure of such information or documents by the MTA.

13. Assignment.

This Agreement shall not be assigned, in whole or in part, by either party without the prior written consent of the other party and, in the event of a consensual assignment, the obligations of this Agreement are binding upon the assignor and the assignee.

14. Notice.

Any notice, consent, approval, or other communication which is permitted or required by this Agreement must be in writing and may be delivered in person or by nationally recognized overnight courier or may be sent by a facsimile transmission, or registered or certified U.S. mail, with postage prepaid, return receipt requested. Any such notice or other written communication shall be deemed received by the party to whom it is sent (i) in the case of personal or courier delivery, on the date of delivery to the person to whom such notice is addressed as evidenced by a written receipt signed by such person and receipt, (ii) in the case of facsimile transmission, on the date of transmission, or if not transmitted on a business day during business hours, the next business day following transmission, and (iii) in the case of registered or certified mail, the earlier of the date receipt is acknowledged on the return receipt for such notice or five (5) business days after the date of posting by the United States Post Office. For purposes of notices or other written

communications, the addresses of the parties hereto shall be as follows, which addresses may

be changed at any time by written notice given in accordance with this provision:


If to MTA:                          General Counsel
                                    MTA Capital Construction Company
                                    2 Broadway, Room 8C.52
                                    New York, New York 10004
With copy to:                       General Counsel
                                    Metropolitan Transportation Authority
                                    347 Madison Avenue
                                    New York, New York 10017

If to plaintiffs:                   Joseph J. Ceccarelli
                                    Erik J. Berglund
                                    Ceccarelli Weprin PLLC
                                    Two Wall Street
                                    New York, New York  10005
With copy to:                       Jeffrey E. Glen
                                    Rene F. Hertzog
                                    Anderson Kill & Olick, P.C.
                                    1251 Avenue of the Americas
                                    New York, New York  10020

15.     Injunctive Relief.

        The Receiving Parties acknowledge that the obligations of confidence required

hereunder are extraordinary and unique and are vital to the protection of public security and

safety and the success of Disclosing Party and that damages at law would be an inadequate

remedy for any breach or threatened breach of this Agreement by the Receiving Parties.

Therefore, in the event of a breach or a threatened breach by Receiving Party of any

provision of this Agreement, a Disclosing Party shall be deemed to have demonstrated that it

has no adequate remedy at law and will or has suffered irreparable damages, and shall not be

required to post any bond or other security in order to obtain an injunction.

16.     Non-Exclusive Remedies.

        Except as otherwise expressly provided herein, no remedy herein conferred upon any

party is intended to be exclusive of any other remedy, and each and every such remedy shall

be cumulative and shall be in addition to every other remedy given hereunder or now or

hereafter existing at law or in equity or by statute or otherwise.  No single or partial exercise

by any party of any right or remedy hereunder shall preclude any other or further exercise of

such right or any other right or remedy to which such party is entitled.

17.    Waiver.

Waiver by either party of a breach of any provisions of this Agreement shall not be

deemed to be a waiver of any other or subsequent breach and shall not be construed to be a

modification of the terms of this Agreement unless and until the same shall be agreed to in

writing by the party against whom the waiver is sought to be enforced. This Agreement is

without waiver or prejudice to any of the rights and remedies that the Parties may assert in

the event settlement of the above-captioned cases is not concluded.

19.    Counterpart.

This Agreement may be signed, emailed or faxed in counterpart for the Court's

review and so ordering, and if so signed, emailed or faxed, shall be considered the equivalent

of one fully signed Agreement for all purposes.


SO ORDERED
this _23_ day of March 2011

_____
UNITED STATES DISTRICT JUDGE


Consented to:

Yorkshire Towers Company L.P. and
Yorkshire Towers Tenants Association

By: _____
      Joseph J. Ceccarelli

Erik J. Berglund
CECCARELLI WEPRIN PLLC
Two Wall Street
New York, New York 10005
(212) 227-4848
jceccarelli@cecwep.com
eberglund@cecwep.com

ANDERSON KILL & OLICK, P.C.
Jeffrey E. Glen
Rene F. Hertzog
1251 Avenue of the Americas
New York, New York 10020
(212) 278-1000
jglen@andersonkill.com
rhertzog@andersonkill.com

*Attorneys for Plaintiffs Yorkshire Towers Company L.P.*
*and Yorkshire Towers Tenants Association*

METROPOLITAN TRANSPORTATION
AUTHORITY, JAY H. WALDER, in
his capacity as Chairman of the Metropolitan
Transportation Authority, NEW YORK CITY
TRANSIT AUTHORITY, THOMAS F. PRENDERGAST,
JR., in his capacity as the President of the New York
City Transit Authority, METROPOLITAN
TRANSPORTATION AUTHORITY CAPITAL
CONSTRUCTION COMPANY, and MICHAEL
HORODNICEANU, in his capacity as President of
the Metropolitan Transportation Authority Capital
Construction Company

BY: _____
Gordon J. Johnson
Deputy General Counsel
Metropolitan Transportation Authority
Office of the General Counsel
347 Madison Avenue – 9th Fl.
New York, NY 10017
(212) 878-4633
email: gojohnso@mtahq.org
*Attorney for MTA Defendants*

Attachment A

LIST OF DOCUMENTS PROVIDED TO RECEIVING PARTY
UNDER THE TERMS OF THIS AGREEMENT


1._____

2._____

3._____

4._____

5._____

6._____


Plaintiffs' Representative's  Initials_____

MTA Representative's Initials_____

**ATTACHMENT B**

NAMES, ADDRESSES AND AFFILIATIONS OF PERSONS ACTING ON BEHALF OF
RECEIVING PARTY WHO AGREE TO ABIDE BY THE TERMS AND CONDITIONS
OF THE CONFIDENTIALITY AGREEMENT TO WHOM RECEIVING PARTY MAY
DISCLOSE CONFIDENTIAL INFORMATION

The undersigned agree(s) to abide by the terms and conditions of the Confidentiality
Agreement to which this Agreement is attached.

1.  Name: _____          Company_____
Address: _____
_____
Relationship:_____

Signature:_____

2.  Name: _____          Company_____
Address: _____
_____
Relationship:_____

Signature:_____

3.  Name: _____          Company_____
Address: _____
_____
Relationship:_____

Signature:_____

4.  Name: _____          Company_____
Address: _____
_____
Relationship:_____

Signature:_____

5.  Name: _____          Company_____
Address: _____
_____
Relationship:_____

Signature:_____

**ATTACHMENT B CONTINUED**
**ADD SIGNATURES, OR FILL IN AT A LATER DATE**


6.  Name: _____          Company_____
Address:       _____

_____
Relationship:_____

Signature:_____

7.  Name: _____          Company_____
Address:       _____

_____
Relationship:_____

Signature:_____


8.  Name: _____          Company_____
Address:       _____

_____
Relationship:_____

Signature:_____

9.  Name: _____          Company_____
Address:       _____

_____
Relationship:_____

Signature:_____

10.  Name: _____          Company_____
Address:       _____

_____
Relationship       _____

Signature:_____

11. Name: _____          Company_____
Address:       _____

_____
Relationship:_____

Signature:_____