UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YORKSHIRE TOWERS COMPANY L.P., *et ano.* | 10 CIV 8973 (TPG) |
| *Plaintiffs*, | |
| - against - | |
| THE FEDERAL TRANSIT ADMINISTRATION, *et al.*, | |
| *Defendants.* | |

| | |
|---|---|
| YORKSHIRE TOWERS COMPANY L.P., *et ano.* | 11 CIV 1058 (TPG) |
| *Plaintiffs*, | |
| - against - | |
| UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OF MTA DEFENDANTS
IN OPPOSITION TO PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION**

Bryan Cave LLP
1290 Avenue of the Americas
New York, New York  10104
*Attorneys for Defendants Metropolitan Transportation Authority, Jay H. Walder in his capacity as its Chairman, New York City Transit Authority, Thomas F. Prendergast in his capacity as its President, Metropolitan Transportation Authority Capital Construction Company, and Michael Horodniceanu in his capacity as its President*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

POINT I   A PRELIMINARY INJUNCTION IS AN EXTRAORDINARY REMEDY ........... 1

POINT II  PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ...................................................................................................... 3

    A.      Plaintiffs Have Not Established That They Are Likely To Suffer Irreparable Harm In The Absence of Preliminary Relief. .......................................................... 3

    B.      Plaintiffs Have Not Established A Likelihood Of Success On The Merits. ............ 6

        1.      Plaintiffs' Lawsuit Is Time Barred. ............................................................. 7

        2.      Plaintiffs Fail To Establish a NEPA Violation. .......................................... 7

        3.      Plaintiffs' Non-Pleaded Contentions Pertaining To "Reduced Alternative 5" And Other Alleged "New Information" Should Not Be Considered By The Court And, In Any Event, Do Not Establish A NEPA Violation. ........................................................................................ 8

            a.      The Theory Plaintiffs Sketch Out In Their Preliminary Injunction Papers Is Not Pleaded In Their Complaint. .................... 9

            b.      Plaintiffs Have Not Moved For Leave To File An Amended Complaint And Were They To So Move, MTA Would Oppose The Motion As Untimely And Unfairly Prejudicial. ....................... 9

            c.      Plaintiffs Waived Their Contentions With Respect to Reduced Alternative 5 And Their Other Arguments By Failing To Raise Them During The Public Comment Period On The SEA In 2009 ............................................................................................... 10

            d.      Reduced Alternative 5 And Plaintiffs' Other Arguments Are Not The Type Of "New Information" That Would Require The Agencies To Re-Open The NEPA Process ............................. 10

    C.      The Public Interest Militates Against Granting Injunctive Relief. ........................ 12

CONCLUSION .......................................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**

*Alleyne v. N.Y. State Education Department*, 516 F.3d 96 (2d Cir. 2008) ....................................2

*BAM Historic District Association v. Koch*, 723 F.2d 233 (2d Cir. 1983) ......................................3

*Britt v. U.S. Army Corps of Eng'rs*, 769 F.2d 84 (2d Cir. 1985).......................................................6

*Brody v. Village of Port Chester*, 21 F.3d 288 (2d Cir. 2001)..........................................................3

*Cayuga Indian Nation of N.Y. v. Village of Union Springs*, 293 F. Supp. 2d 183
   (N.D.N.Y. 2003) ..........................................................................................................................5

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598
   F.3d 30 (2d Cir. 2010)..................................................................................................................2

*City of Rochester v. U.S. Postal Serv.*, 541 F.2d 967 (2d Cir. 1976)................................................6

*Concerned Citizens of Chappaqua v. U.S. Department of Transport*, 579 F. Supp. 2d 427
   (S.D.N.Y. 2008) ...........................................................................................................................2

*Conservation Society of S. Vt., Inc. v. Sec'y of Transport*, 508 F.2d 927 (2d Cir. 1974).................6

*Dalsis v. Hills*, 424 F. Supp. 784 (W.D.N.Y. 1976) ........................................................................4

*Department of Transportation v. Public Citizen*, 541 U.S. 752 (2004).........................................10

*E. 63rd St. Association v. Coleman*, 414 F. Supp. 1318 (S.D.N.Y. 1976).....................................12

*Environmental Defense v. EPA*, 369 F.3d 193 (2d Cir. 2004).....................................................7, 8

*Habitat for Horses v. Salazar*, 745 F. Supp. 2d 438 (S.D.N.Y. 2010) ........................................2, 3

*Macht v. Skinner*, 715 F. Supp. 1131 (D.D.C. 1989)................................................................5, 12

*Main-Amherst Bus. Association v. Adams*, 461 F. Supp. 1077 (W.D.N.Y. 1978).....................9, 14

*Marsh v. Oregon Natural Resources Council*, 490 U.S. 360 (1989)....................................7, 8, 11

*Moore v. Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506 (2d Cir. 2005)...............................1

*N. Idaho Community Action Network v. U.S. Department of Transportation*, 545 F.3d
   1147 (9th Cir. 2008)...................................................................................................................10

*NRDC v. FAA*, 564 F.3d 549 (2d Cir. 2009) ............................................................................. 7, 8

*NRDC v. U.S. Army Corps of Eng'rs*, 457 F. Supp. 2d 198 (S.D.N.Y. 2006) ................................ 5

*New York v. NRC*, 550 F.2d 745 (2d Cir. 1977) ........................................................................... 6

*Northwest Bypass Grp. v. U.S. Army Corps of Eng'rs*, 470 F. Supp. 2d 30 (D.N.H. 2007) ............ 5

*Oneida Nation of New York v. Cuomo*, 645 F.3d 154 (2d Cir. 2011) ............................................. 2

*Plaza Health Laboratoriess, Inc. v. Perales*, 878 F.2d 577 (2d Cir. 1989) .................................... 2

*Preservation Coalition of Erie Cnty. v. Federal Transit Admin.*, 129 F. Supp. 2d 551
    (W.D.N.Y. 2000) ......................................................................................................................... 6

*Sierra Club v. Slater*, 120 F.3d 623 (6th Cir. 1997) ...................................................................... 8

*Stow v. United States*, 696 F. Supp. 857 (W.D.N.Y. 1988) ........................................................... 8

*Time Warner Cable v. Bloomberg, L.P.*, 118 F.3d 917 (2d Cir. 1997) .......................................... 3

*Town of Huntington v. Marsh*, 884 F.2d 648 (2d Cir. 1989) ......................................................... 6

*Village of Grand View v. Skinner*, 947 F.2d 651 (2d Cir. 1991) ................................................... 7

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) .................................................................. 3

*Winter v. NRDC*, 555 U.S. 7 (2008) ......................................................................................... 1, 3

*Zenith Radio Corp. v. Hazeltine Research Corp.*, 401 U.S. 321 (1971) ....................................... 9

### STATUTES AND REGULATIONS

23 C.F.R. § 771.130 ...................................................................................................................... 11

23 U.S.C. § 139(l) ........................................................................................................................... 7

FRCP 65(c) ..................................................................................................................................... 3

**PRELIMINARY STATEMENT**

The MTA Defendants respectfully submit this memorandum in opposition to plaintiffs' motion for a preliminary injunction to halt the work now ongoing to relocate utilities in preparation for construction of a northern entrance ("Entrance 2") for the 86th Street Station of the Second Avenue Subway.  In 2009, the Metropolitan Transportation Authority ("MTA") and Federal Transit Administration ("FTA") carefully considered the potential environmental impacts of alternative locations for Entrance 2 before selecting the location on the north side of E. 86th Street (the "Preferred Alternative").  As demonstrated in MTA's motion to dismiss, plaintiffs failed to challenge the selection of the Preferred Alternative within the applicable 180-day limitations period, and have put forward no basis for this Court to consider their untimely claims or to conclude that they have any merit.  Plaintiffs also fall far short of demonstrating irreparable harm.  Moreover, a delay in the work that is now ongoing would delay the opening of the first phase of the Second Avenue Subway (the "Project") in 2016, thereby deferring delivery of a much-needed expansion to the subway system and causing MTA, a public authority providing an essential public service, immense economic harm.

**POINT I**

**A PRELIMINARY INJUNCTION IS AN EXTRAORDINARY REMEDY**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. NRDC, 555 U.S. 7, 22 (2008); *see also* Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005) (preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.").

Generally, the Second Circuit requires a party seeking a preliminary injunction to "show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010).  Where, however, the moving party seeks to stay a government action taken in the public interest pursuant to a statutory or regulatory scheme, a more rigorous standard applies, and interim relief will not be granted unless "the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." Id. at 35 n.4 (quotation marks and citation omitted).  Since the Second Avenue Subway is just such a government action, this latter, more exacting standard applies.  *See* Concerned Citizens of Chappaqua v. U.S. Dep't of Transp., 579 F. Supp. 2d 427, 432 (S.D.N.Y. 2008) (applying the more rigorous standard in a case involving a NEPA challenge to federal and state agency approvals of a bridge reconstruction project).  Thus, to succeed on their motion, plaintiffs must demonstrate by a clear showing both irreparable harm and a likelihood that their claims will prevail.  *See* Alleyne v. N.Y. State Educ. Dep't, 516 F.3d 96, 101 (2d Cir. 2008); Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989); Habitat for Horses v. Salazar, 745 F. Supp. 2d 438, 447 (S.D.N.Y. 2010).[1]

---

[1]  Given that this action involves a project undertaken in the public interest pursuant to federal and state law, this memorandum focuses on the two-part test applicable to public actions.  However, the memorandum also establishes that plaintiffs have not raised "sufficiently serious questions going to the merits," and that the "balance of hardships" weighs in favor of defendants, so that the preliminary injunction application also would fail to meet the test that applies more generally in the Second Circuit.  *See* Oneida Nation of New York v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011).

In addition, the public interest always must be weighed by a court in considering injunctive relief. *See* Winter, 555 U.S. at 24 ("'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)). "'Whenever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief.'" Brody v. Vill. of Port Chester, 21 F.3d 288, 290 (2d Cir. 2001) (quoting Time Warner Cable v. Bloomberg, L.P., 118 F.3d 917, 929 (2d Cir. 1997)); *see also* BAM Historic Dist. Ass'n v. Koch, 723 F.2d 233, 236 (2d Cir. 1983).[2]

## POINT II

## PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION

Plaintiffs have failed to make any of the required showings for a preliminary injunction.

### A. Plaintiffs Have Not Established That They Are Likely To Suffer Irreparable Harm In The Absence of Preliminary Relief.

"'A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" Habitat for Horses, 745 F. Supp. 2d at 448 (quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009)). Plaintiffs seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22.

---

[2]   In the event a preliminary injunction is issued, a substantial bond must be required pursuant to FRCP 65(c) since under the applicable contract MTA would potentially incur costs of between $60,000 and $115,000 for *each day* of construction delay. *See* Point II.C, *infra*.

Despite this heavy burden, plaintiffs make no fact-based allegation of any irreparable harm they would suffer if the requested relief is not granted. On the contrary, they correctly observe that the "dire emergency" threatened in many environmental cases "is not now present." Mem. Law Support Pls.' Mot. Prelim. Inj. at 2-3. Plaintiffs note that MTA's contractor will "tear up [the street and sidewalk], reroute the traffic away from the center lanes of the street, excavate, and lay a new sewer down the middle of 86th Street," but concede that "New Yorkers live with that kind of disruption." Id. at 3. Indeed, plaintiffs acknowledge that "were this construction program to be needed this motion would not be made." Id. at 3. Thus, plaintiffs advise that the "bulk" of their memorandum focuses – not on some concern that irreparable injury would befall them if the work proceeds during the pendency of this litigation – but on whether the work is needed in light of the alternative entrance location on the south side of E. 86th Street that they support. Id. With these concessions, it is impossible to find a showing of irreparable harm. See Dalsis v. Hills, 424 F. Supp. 784, 792 (W.D.N.Y. 1976) (denying preliminary injunction halting construction "[b]ecause plaintiffs have not made an affirmative showing that irreparable harm would result from continued construction of the mall").

In any event, the work at issue is not of the sort that would give rise to the need for preliminary relief. The activities that will take place between November 2011 and April 2012 involve the establishment of a work zone in the center of 86th Street, excavation and utility relocation. See Defendants' declaration of Bradford C. Robinson ("Robinson Decl.") ¶¶ 24-28, 31. As plaintiffs acknowledge, work of this nature is commonplace in New York City, so

construction will not alter the "characteristic use of the land involved."  Macht v. Skinner, 715 F. Supp. 1131, 1137 (D.D.C. 1989).[3]

Nor are the actions that MTA's contractors will undertake during the pendency of this action incapable of being remediated.  See NRDC v. U.S. Army Corps of Eng'rs, 457 F. Supp. 2d 198, 236 (S.D.N.Y. 2006) (indicating that the threshold for irreparable harm would not be met where potential harm could be "managed or remediated"); Northwest Bypass Grp. v. U.S. Army Corps of Eng'rs, 470 F. Supp. 2d 30, 64 (D.N.H. 2007) ("Even if the Court makes the safe assumption that filling in wetlands must cause some environmental damage, there is no evidence in this record that the damage is irreparable in the legal sense that, if they win on the merits, it could not be remediated.").  In the unlikely event the work turns out to be unnecessary, as plaintiffs contend, the sidewalk could be replaced and the area restored as appropriate.  See Cayuga Indian Nation of N.Y. v. Vill. of Union Springs, 293 F. Supp. 2d 183, 198 (N.D.N.Y. 2003) (declining to enjoin construction and renovation activity where the party seeking the injunction "has not established that it cannot be returned to the position it occupied prior to the commencement of construction or renovation activity on the Property").

In addition, plaintiffs' contention that they will suffer irreparable injury because the continuation of construction activities will prejudice the selection of alternatives does not come close to establishing the requisite irreparable harm.  Like the Preferred Alternative, the most recent version of plaintiffs' proposed alternative would also require extensive utility relocation in the center of E. 86th Street, including the relocation of the large sewer there.  See Defendants' declaration of Richard Paupst ("Paupst Decl.") ¶¶ 19, 23, 34.  "Under Second Circuit law, a district court is not required to enjoin construction pending completion of an EIS

---

[3]  The required tree removal has already been completed, as has the removal of street furnishings.  Robinson Decl. ¶ 24.

5

simply because a particular proposal might be preempted during the time it takes to complete [the environmental review]." Preservation Coalition of Erie Cnty. v. FTA, 129 F. Supp. 2d 551, 575 (W.D.N.Y. 2000) (allowing construction to continue during preparation of SEIS).[4]  Rather, the risk that construction will affect the viability of an alternative proposal must be weighed against the risk of harm to defendants and the public should work be halted.  *See* id. (The "risk that construction during the pendency of the SEIS will affect the viability of [plaintiffs'] proposal … is outweighed by the risk of harm to defendants' interests, if construction is enjoined.  The … Project involves a broad range of commercial, recreational, and aesthetic goals, all of which could be jeopardized if the project were halted at this critical stage.").

        **B.**        **Plaintiffs Have Not Established A Likelihood Of Success On The Merits.**

Even if plaintiffs could make a showing of irreparable harm, their inability to demonstrate a likelihood of success on the merits would preclude the issuance of a preliminary injunction.  *See* Britt v. U.S. Army Corps of Eng'rs, 769 F.2d 84, 91 (2d Cir. 1985) (agreeing with district court that removal of a bridge would cause irreparable harm but holding that the district court abused its discretion in granting a preliminary injunction).  Plaintiffs have failed to show likelihood of success on the merits for three reasons:

---

[4]    *See, e.g.*, Town of Huntington v. Marsh, 884 F.2d 648, 653 (2d Cir. 1989) ("'[W]here the equities require, it remains within the sound discretion of a district court to decline an injunction, even where deviations from prescribed NEPA procedures have occurred.'" (quoting Conservation Soc'y of S. Vt., Inc. v. Sec'y of Transp., 508 F.2d 927, 933 (2d Cir. 1974)); City of Rochester v. U.S. Postal Serv., 541 F.2d 967, 977 (2d Cir. 1976) (declining to enjoin construction pending compliance with NEPA); New York v. NRC, 550 F.2d 745, 753-54 (2d Cir. 1977) ("'We also note that even if there were violations of [NEPA], which we by no means find, the district court has substantial discretion to determine whether an injunction should issue.'" (citation omitted)).

1.	**Plaintiffs' Lawsuit Is Time Barred.**

Plaintiffs' lawsuit seeks to challenge a determination made by the defendant agencies in 2009 to locate Entrance 2 on the north side of E. 86th Street. Since plaintiffs failed to file the litigation within the required 180-day statute of limitations, it is time barred and must be dismissed. *See* 23 U.S.C. § 139(l). This issue, and the defects in plaintiffs' state law claims, is briefed to the Court in defendants' motion to dismiss papers, which are incorporated herein by reference.

2.	**Plaintiffs Fail To Establish a NEPA Violation.**

Assuming *arguendo* that the lawsuit was timely filed, plaintiffs have failed to establish any violation of the National Environmental Policy Act ("NEPA"). The central allegation in plaintiffs' Complaint is that the defendants violated NEPA in 2009 when they selected the Preferred Alternative on the north side of E. 86th Street in 2009 without preparation of a Supplemental Environmental Impact Statement ("SEIS"). If the Court were to reach the merits of plaintiffs' claim, it would review the FTA's decision not to require preparation of an SEIS, considering "(1) whether the agency took the 'hard look' that the new circumstances [or, in this case, design changes] required and, if so, (2) whether the agency's decision, based on what it learned, was arbitrary or capricious." NRDC v. FAA, 564 F.3d 549, 561-62 (2d Cir. 2009); *see also* Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 376-77 (1989) ("Marsh"); Vill. of Grand View v. Skinner, 947 F.2d 651, 657 (2d Cir. 1991). The task that would be before the Court under the arbitrary and capricious standard would be "to decide if the agency has considered the evidence, examined the relevant factors, and spelled out a satisfactory rationale for its action including the demonstration of a reasoned connection between the facts it found and the choice it made." Envtl. Defense v. EPA, 369 F.3d 193, 201 (2d Cir. 2004).

7

"Under this deferential standard of review," a court "cannot substitute [its] judgment for that of the agency."  NRDC, 564 F.3d at 555; *see also* Envtl. Defense, 369 F.3d at 201 (calling the arbitrary and capricious standard "narrow and particularly deferential").  "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."  Marsh, 490 U.S. at 378; *see also* Sierra Club v. Slater, 120 F.3d 623, 633 (6th Cir. 1997) ("[P]laintiffs believe that the defendants reached the wrong conclusion.  That, it is plain, is not the type of argument that allows a court to conclude that an agency's decision [not to prepare an SEIS] was arbitrary and capricious.").  Thus, "differences of opinion do not create a violation of NEPA."  Stow v. United States, 696 F. Supp. 857, 859 (W.D.N.Y. 1988).

Plaintiffs do not so much as mention this standard of review.  More importantly, there is nothing in their motion papers establishing that the defendants failed to take the requisite "hard look" at the alternative entrance locations in preparing the 2009 Supplemental Environmental Assessment ("SEA") and Finding of No Significant Impact ("FONSI").  Thus, they have failed utterly to bear their burden of showing that they have any likelihood of success on the NEPA claim they pleaded in their Complaint.

      **3.**    **Plaintiffs' Non-Pleaded Contentions Pertaining To "Reduced Alternative 5" And Other Alleged "New Information" Should Not Be Considered By The Court And, In Any Event, Do Not Establish A NEPA Violation.**

In their effort to demonstrate "likelihood of success on the merits," plaintiffs make no mention of any purported deficiency in the SEA or FONSI (the NEPA claim they pleaded in their Complaint).  Instead, they now contend that NEPA requires defendants to examine a new alternative they call "Reduced Alternative 5" and other alleged "new information" that supposedly came to light *after* the FONSI was issued.  *See, e.g.,* Mem. Law

8

Support Pls.' Mot. Prelim. Inj. at 3, 10.  There is no merit to this suggestion for the reasons set forth below.

> **a.     The Theory Plaintiffs Sketch Out In Their Preliminary Injunction Papers Is Not Pleaded In Their Complaint.**

Plaintiffs must show that they have a likelihood of success *with respect to a claim pleaded in their Complaint*.  Yet their Complaint does not plead any allegations pertaining to "Reduced Alternative 5" or other "new information" arising after the NEPA process ended in 2009.  Plaintiffs cannot amend their Complaint on the fly in their motion papers.  *See* Main-Amherst Bus. Ass'n v. Adams, 461 F. Supp. 1077, 1083 (W.D.N.Y. 1978) ("The arguments in plaintiff[s'] brief cannot be read into the complaint to support [their] request for a preliminary injunction.").

Plaintiffs have improperly sought a preliminary injunction based on a purported NEPA claim – that defendants are allegedly required to consider Reduced Alternative 5 and related "new information" – that they failed to plead in their Complaint.  Implicitly, plaintiffs have thereby conceded that they have no likelihood of success with respect to any of the claims they actually pleaded in their Complaint.  This concession is fatal to their motion.

> **b.     Plaintiffs Have Not Moved For Leave To File An Amended Complaint And Were They To So Move, MTA Would Oppose The Motion As Untimely And Unfairly Prejudicial.**

Plaintiffs have not sought leave to amend their Complaint to make allegations with respect to "Reduced Alternative 5" or "new information" and cannot do so by filing papers in support of a motion for a preliminary injunction.  Were plaintiffs to seek leave to amend, MTA would oppose such a motion on the ground that it would be highly prejudicial to permit amendment of the pleadings after construction contracts have been signed and work has begun. *See* Zenith Radio Corp. v. Hazeltine Research Corp., 401 U.S. 321, 330-31 (1971) ("[I]n

deciding whether to permit … amendment [of pleadings], the trial court was required to take into account any prejudice that Zenith would have suffered as a result."). Two years have passed since the FONSI was issued; the design of the 86th Station is finalized; construction has commenced; and a delay in the work would delay the opening of the Second Avenue Subway in 2016 (*see* Robinson Decl. ¶¶ 4, 38-43; Paupst Decl. ¶ 33), thereby delaying benefits to transit users (*see* Robinson Decl. ¶¶ 41, 43) and causing enormous economic harm to MTA (*see* Defendants' declaration of Anil Parikh ("Parikh Decl.") ¶¶ 11-12).

        **c.**      **Plaintiffs Waived Their Contentions With Respect to Reduced Alternative 5 And Their Other Arguments By Failing To Raise Them During The Public Comment Period On The SEA In 2009.**

By failing to raise their Reduced Alternative 5 and other arguments during the public comment period on the SEA in 2009, the plaintiffs waived any contention that the agencies are required to consider these matters. *See* Dep't of Transp. v. Public Citizen, 541 U.S. 752, 764-65 (2004) (holding that plaintiffs "forfeited any objection to the EA on the ground that it failed adequately to discuss potential alternatives" because during the comment period they did not identify any alternatives beyond those evaluated in the EA); N. Idaho Cmty. Action Network v. U.S. Dep't of Transp., 545 F.3d 1147, 1156 n.2 (9th Cir. 2008) ("[B]ecause the tunnel alternative was not raised and identified until June 2006, well after the notice and comment periods for the 1999 EIS and the 2005 EA closed, any objection to the failure to consider that alternative has been waived.").

        **d.**      **Reduced Alternative 5 And Plaintiffs' Other Arguments Are Not The Type Of "New Information" That Would Require The Agencies To Re-Open The NEPA Process.**

Plaintiffs make a fundamental error in suggesting that information about *a new alternative* can trigger the re-opening of the NEPA process. An SEIS may be required where

"[n]ew information or circumstances relevant to environmental concerns and *bearing on the proposed action or its impacts* would result in *significant environmental impacts not evaluated in the EIS*." 23 C.F.R. § 771.130(a)(2) (emphases added).  Thus, the obligation to perform a supplemental NEPA review arises only where "new information" bears "on the proposed action or its impacts" such that the proposed action "would result in significant environmental impacts" not previously addressed.  Plaintiffs have submitted several lengthy Declarations discussing their Reduced Alternative 5, but none of them establishes that the Preferred Alternative selected in 2009 would result in new, previously unidentified significant environmental impacts.  Nor do any plaintiffs otherwise argue that the purported "new information" they proffer relates to the Preferred Alternative or establishes that it will result in new, previously unidentified environmental impacts.  Accordingly, plaintiffs' contentions do not begin to establish the predicate for a claim that NEPA requires the defendants to stop construction and perform a supplemental environmental review.

   The limits codified in § 771.130(a)(2) on the "new information" to be considered after conclusion of the NEPA process are in accord with well-settled jurisprudence.  The Supreme Court has observed that "an agency need not supplement an EIS every time new information comes to light after the EIS is finalized.  To require otherwise would render agency decision making intractable." Marsh, 490 U.S. at 373.  Rather, an SEIS is required only where "the new information is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already considered." Id. at 374.

   Whatever may be said of the advantages and disadvantages of Reduced Alternative 5, this "new" alternative does not establish that the *proposed action* – the escalator

11

entrance on the north side of 86th Street that the agencies selected in 2009 – will have new previously unknown and unidentified environmental impacts. Thus, defendants have no obligation to consider that new alternative under the relevant regulations or caselaw.

Moreover, the Declarations of Richard Paupst, Allyson Bechtel, Robert Montfort, Bradford Robinson and Anil Parikh submitted by MTA herewith demonstrate that, contrary to plaintiffs' assertions, their Reduced Alternative 5 is markedly inferior to the Preferred Alternative selected by the agencies in 2009 (*see* Paupst Decl. ¶¶ 24-34; Defendants' declaration of Allyson Bechtel ("Bechtel Decl.") ¶¶ 5, 15-17, 19-20; Defendants' declaration of Robert Montfort ("Montfort Decl.") ¶¶ 2, 25-32) and that stopping the construction work to undertake the studies and other actions needed to switch to this inferior alternative at this late date would result in tens of millions of dollars of extra costs to MTA (Parikh Decl. ¶¶ 11-12) and years of delay in the opening of the Second Avenue Subway (Robinson Decl. ¶¶ 38-48; Paupst Dec. ¶¶ 31-33). Accordingly, Reduced Alternative 5 does not even meet the screening criteria for viable alternatives specified in the SEA. *See* SEA at 1-15.

C.   **The Public Interest Militates Against Granting Injunctive Relief.**

Plaintiffs' request that the Court halt construction of a critical element of the Second Avenue Subway is contrary to the public interest. The Second Avenue Subway is a multi-billion dollar public project that has undergone many years of planning and public review. Robinson Decl. ¶ 7. Courts, including this one, have recognized the public's interest in the completion of mass transit projects. *See, e.g.*, E. 63rd St. Ass'n v. Coleman, 414 F. Supp. 1318, 1331 (S.D.N.Y. 1976) (denying motion for preliminary injunction to halt work on the East 63rd Street subway station and stating that "the primary public interest lies with the subway's rapid completion"); Macht v. Skinner, 715 F. Supp. 1131, 1137 (D.D.C. 1989) ("There is a substantial

12

public interest in the construction of mass transit systems designed to ease the burden on overcrowded local roadways.").

The completion of the Second Avenue Subway line will result in a significant public benefit by reducing overcrowding on Lexington Avenue 4, 5, and 6 train service and offering subway service to areas of Manhattan that are a bus ride or long walk to the Lexington Avenue line.  Robinson Decl. ¶ 43.  Phase 1, which has been under intensive construction since 2007, includes tunnels from 105th Street and Second Avenue to 63rd Street and Third Avenue, with new stations along Second Avenue at 96th, 86th and 72nd Streets and new entrances to the existing Lexington Avenue/63rd Street Station at 63rd Street and Third Avenue.  Id. ¶ 6.  Phase 1 subway service is projected to carry over 200,000 weekday riders.  Id.

The public investment in the Second Avenue Subway has been enormous.  FTA has agreed to provide $1.351 billion for the project to date.  Id. ¶ 7.  Funds totaling approximately $3 billion have been allocated in MTA's Capital Programs budgets.  Id.  The total cost of Phase 1 exceeds $4.9 billion.  Id.

The Robinson Declaration explains the extremely complex schedule for the construction of Phase 1 of the Second Avenue Subway Project and of the 86th Street Station, including Entrance 2.  It also describes how the construction that plaintiffs seek to enjoin is critical to the completion of the 86th Street Station.  Id. ¶¶ 21-32.  That work is, in turn, critical to the completion of Phase 1 of the Second Avenue Subway.  Id.  Even seemingly modest delays can have considerable impact on the overall schedule of the project and add to the total cost.  Id. ¶ 41.

Any delay in constructing Entrance 2 could therefore put the timely completion and operation of Phase 1 of the Second Avenue Subway at significant risk.  Id. ¶¶ 39-43.

13

Clearly, such a delay would be against the public interest, since more time would pass before the Second Avenue Subway would ease overcrowded conditions on the Lexington Avenue line and begin generating revenue to offset its costs. Id. ¶ 43. In addition, each day that the Project is delayed results in another day of construction activities and related impacts on the Upper East Side. Id. ¶ 42.

Furthermore, any delay would result in increased public costs and is therefore also contrary to the public interest on that basis. See Main-Amherst Bus. Ass'n, 461 F. Supp. at 1085 (citing estimates that each day's delay would add $120,000 to the costs of construction as factor in finding that "the balance of hardships tips decidedly in defendants' favor"). The increased costs that MTA would potentially incur if a preliminary injunction were issued are substantial and weigh heavily against such relief. The Declaration of Anil Parikh describes the costs MTA would potentially incur. See Parikh Decl. ¶¶ 3, 7-12. Under the contract for the portion of the Project that includes Entrance 2, MTA would be obligated to pay the contractor substantial daily "Impact Costs" for each day of delay caused by an injunction that delays the Substantial Completion Date for the contract. Pursuant to these contractual provisions, MTA would potentially incur Impact Costs of between $60,000 and $115,000 for each day of delay. Id. ¶ 11. These penalties could increase the costs of the Project by $1.2 million to $2.3 million on a monthly basis. Id. ¶ 12.

Thus, it is clear that the public interest would be served by allowing the work to go forward without interruption. The negligible alleged harm to the plaintiffs should carry little weight in comparison to the detriment to the public that a preliminary injunction would cause.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion for a preliminary injunction.

Dated: New York, New York
       October 25, 2011

                          Respectfully submitted,

                          BRYAN CAVE LLP

                          By: *Philip E. Karmel* (signature)
                              Philip E. Karmel (pekarmel@bryancave.com)
                              J. Kevin Healy (jkhealy@bryancave.com)
                          1290 Avenue of the Americas
                          New York, New York  10104
                          Telephone: 212-541-2000
                          *Attorneys for Defendants Metropolitan Transportation Authority, Jay H. Walder in his capacity as its Chairman, New York City Transit Authority, Thomas F. Prendergast in his capacity as its President, Metropolitan Transportation Authority Capital Construction Company, and Michael Horodniceanu in his capacity as its President*